IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, and THE PROCTER & GAMBLE DISTRIBUTING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>RANDY L. HAUGEN, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE LANHAM ACT CLAIM<br><br><br>Case No. 1:95-CV-94 TS |

I.  INTRODUCTION

This matter is before the Court on the parties' Motions for Summary Judgment on the Lanham Act claim. The Court need not recount this case's long and complicated procedural history, except to note that, after ten years of litigation, the Lanham Act claim is the only claim that remains for the upcoming jury trial.  The background facts necessary to understand the current motions are that sometime in 1995, some or all of the Defendants, independent distributors of Amway products, disseminated a voice mail

1

message via Amways' Amvox voice mail system, stating, among other things, that a large portion of the profits of Plaintiff Procter & Gamble's products went to support a satanic church (Amvox Messages).  The rumor contained in the Amvox Messages is now acknowledged by all parties to be false.  As a result of the Amvox messages, Plaintiff Procter & Gamble (P & G) filed the present action, as well as a companion case in Texas (the Texas case).[1]  This case has resulted in three appeals to the Tenth Circuit, the opinion resulting from the first of which is the subject of one of the present Motions.[2]

For the reasons stated below, the Court will grant Plaintiffs partial summary judgment on their Lanham Act claim and will deny Defendants' Motion for Summary Judgment on the same claim.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law."[3]  The Court reviews "the entire record on summary judgment . . . in the light most favorable to the party

---

[1] *Procter & Gamble Co. v. Amway Corp.*, 80 F.Supp.2d 639 (S.D. Tex. 1999); rev'd in part *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001); *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 498 (5th Cir. 2004); see also *Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180, 182-84, 188 (6th Cir. 2003) (noting long history of interrelated litigation).

[2] *Procter & Gamble Co. v. Haugen (P & G I)*, 222 F.3d 1262 (10th Cir. 2000); *Procter & Gamble Co. v. Haugen (P & G II)*, 317 F.3d 1121 (10th Cir. 2003); *Procter & Gamble Co. v. Haugen (P & G III)*, 427 F.3d 727 (10th Cir. 2005).

[3] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476 (10th Cir. 1990)).

opposing summary judgment."[4]  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."[5]

### III.  PLAINTIFF'S MOTION

Plaintiffs style their Motion as a Motion for Summary Judgment, however, the Motion is more accurately described as seeking partial summary judgment. Plaintiffs move for partial summary judgment on their Lanham act regarding the following: that Defendants sent the Amvox Messages containing the rumor, that the rumor was false, and that it constituted commercial speech.  Defendants admit the first two items.  The parties disagree on whether the Tenth Circuit's opinion in *P & G I*[6] determined the third item—that the Amvox Messages were commercial speech.  Both rely on the Tenth Circuit's opinion in *P & G I*, but disagree as to its meaning.

Arguing that *P & G I* did not decide the issue, Defendants now attempt to argue what they "at no time"[7] argued before—that the Amvox Messages were not commercial speech because they contain a significant theological component that was inextricably intertwined with a theological purpose.

---

[4]*Id.*

[5]*Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1146 (10th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]222 F.3d 1262.

[7]*P & G I*, 222 F.3d at 1275.

Because this Court is free to determine only those matters which were not "expressly or impliedly disposed of on appeal,"[8] this Court must examine the *P & G I* opinion and mandate to determine whether the commercial speech nature of the Amvox Messages issue was decided.[9]

Defendants, appellees in *P & G I*, raised the specific issue of whether the Amvox Messages were "commercial speech" and therefore within the meaning of the phrase "commercial advertising or promotion" in § 42(a) of the Lanham Act.[10] The Tenth Circuit thoroughly examined that specific issue.[11] In so doing, the Tenth Circuit adopted a four-part test for determining the "commercial advertising or promotion" element of a § 43(a)(1)(B) Lanham Act claim:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B) [of the Lanham Act], they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.[12]

---

[8] *P & G II*, 317 F.3d at 1126 (quoting *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir. 1986)).

[9] *Id.* at 1125-26.

[10] 15 U.S.C. §1125(a)(1)(B).

[11] *P & G II*, 317 F.3d at 1274 ("In the present case, appellees effectively raise only P & G's failure to fulfill the first element of the four-prong test as grounds for affirmance, and *it is that element* which we examine.").

[12] *P & G I,* 222 F.3d at 1273-74 (adopting four-part test from *Gordon & Breach Science Publishers, S.A. v. American Institute of Physics*, 859 F.Supp. 1521, 1535-36

Reviewing the *P & G I*, opinion, the Court finds that the Tenth Circuit determined, as a matter of law, that the Amvox Messages were commercial speech within the meaning of the first part of the four-part test for "commercial advertising or promotion." In contrast, the Tenth Circuit declined to reach the fourth element of the four-part test finding that the fourth part involved issues of fact.

In its instructions for remand the Tenth Circuit concluded that the district court "improvidently granted summary judgment to [Defendants] on P & G's Lanham Act claim,"[13] and "l[eft] it to the district court to consider whether P & G has met those elements of a §43(a) Lanham Act claim "not before us in this appeal"—*i.e.* elements other than the first element of the four-part test.[14]

The Tenth Circuit's mandate consists of its "instructions to the district court at the conclusion of the opinion, *and* the entire opinion that preceded those instructions."[15] Because the *P & G I* opinion and mandate covered the issued regarding the commercial nature of the speech, this Court is bound by the mandate rule and may not re-examine that question.

Further, even if this Court could consider that the issue was not barred by the mandate rule, the Court would find that, considering the Amvox messages as a whole, they are commercial speech.

---

(S.D. N.Y.1994)).

[13]*Id.* at 1276.

[14]*Id.* at 1276 n.10.

[15]*P & G II*, 317 F.3d at 1126 (emphasis added and citation omitted).

Accordingly, Plaintiff is entitled to partial summary judgment that (1) Defendants sent the Amvox Messages; (2) the Amvox Messages were false; and (3) that the Amvox Messages constituted commercial speech within the meaning of the first part of the four-part test for determining whether they constitute "commercial advertising or promotion" under § 43(a)(1)(A) of the Lanham Act.

## IV.  DEFENDANT'S MOTION

Defendants move for summary Judgment on Plaintiff's Lanham Act claim on two grounds.  First, that the Amvox Messages were not sufficiently disseminated to constitute commercial advertising or promotion under the Lanham Act.  Second, Defendants argue that this Court should apply the Utah Statute codifying privilege in slander and liable cases to defeat P & G's federal Lanham Act claim.

As to the first grounds, as noted above, the issue of whether the Amvox Messages were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry"[16] was an issue that the Tenth Circuit declined to decide in *P & G I*, because it was an issue of fact.[17]  Thus, sufficient dissemination is an issue that this Court may reach on remand.  Having reviewed the record on summary judgment, the Court finds that Plaintiff has met its burden of showing a material issue of fact on this fourth part of the four-part test.

---

[16]*P & G I*, 222 F.3d at 1274.

[17]*Id.* at 1276-77 n.9, n.10.

Second, Defendants request that this Court apply a Utah statute, Statute § 45-2-3(3), establishing a state liable and slander law privilege, to defeat the federal Lanham Act claim. In support it relies upon *Rorie v. Edwards*, an unpublished Fifth Circuit case affirming, without substantial analysis, a trial court's application of Texas' judicial process privilege.[18] The Court finds the unpublished case to be unpersuasive. The Court find more persuasive the analysis in *Conditioned Ocular Enhancement, Inc. v. Bonaventura*.[19] In *Bonaventura*, the trial court held that an Illinois state law privilege purporting to confer immunity from suit cannot defeat a federal cause of action under the Lanham Act.[20] In *Bonaventura*, the state law privilege at issue was a litigation privilege.[21]

Further, as was the case with the privilege at issue in *Boneventura*, there is a second reason, "separate and apart" from the first, to not apply the statute as Defendants request—the statute does not apply to the type of claim at issue in the present case.[22] The privilege set forth in Utah Code Ann. § 45-2-3(3) is against Utah state law claims of

---

[18]48 Fed. Appx. 102 *5 (5th Cir. 2002).

[19]458 F.Supp.2d 704 (N.D. Ill. 2006).

[20]*Id*. at 709. *Compare Palmer v. Monticello*, 31 F.3d 1499, 1503-05 (10th Cir. 1994) (§ 1983 action holding Utah's liable and slander privilege contained in § 45-2-3 "may not limit a cause of action for deprivation of a constitutionally protected liberty interest" under federal law).

[21]458 F.Supp.2d at 708.

[22]*Id.* (citing *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (declining to apply Illinois litigation privilege to federal claims because to do so "would insulate behavior that could otherwise be actionable under Title VII or the ADA.").

7

"libel and slander."[23]  Claims of liable and slander are not at issue in this case.  Defendants argue that the conditional privilege of § 45-2-3 has been extended to claims based upon a defamatory statement.   However, the case Defendants rely upon, *Russell v. Thompson Newspapers, Inc.*,[24] extended the qualified "fair report privilege" found in subsection four of the Utah statute,[25] not the "common interest" privilege claimed by Defendants, which is found at subsection three.  The Court declines Defendants' invitation to expand Utah law by  holding that the liable and slander privilege set forth in § 34-2-3(3) is applicable to any cause of action that could arguably be based upon the same operative facts as a defamatory publication.  It is not the place of the federal court to so "expand Utah state law beyond the bounds set by the Utah Supreme Court or, in the absence of Utah Supreme Court precedent, by the lower Utah courts."[26]

In its ruling today that there is no persuasive authority for applying the state law slander and liable privilege set forth in § 45-2-3(3) to the Lanham Act claim in this case, the Court does not reach the issue of any possible application to the Lanham Act of any state law privilege other than the specific one claimed by Defendants herein.[27]  Nor does

---

[23]Utah Code Ann. § 45-2-3 (defining "privileged publication or broadcast which shall not be considered as libelous or slanderous per se").

[24]842 P.2d 896 (Utah 1992).

[25]Utah Code Ann. § 45-2-3.

[26]*P & G I*, 222 F.3d at 1280 (citing *Tayor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993) ("as a federal court, we are generally reticent to expand state law without clear guidance from [the state's] highest court.")).

[27]This fact alone distinguishes the *Rorie* case because it involved the application of a different privilege than the one claimed by Defendants herein.

this case involve any issues of a claim of a testimonial or other evidentiary privilege.[28] Finally, this case does not involve a federal court's necessary application of a state law privilege to a state law claim.[29]  The Court will deny Defendants' Motion for Summary Judgment

V.  ORDER

Based upon the foregoing it is therefore

ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 916) is GRANTED as set forth above.  It is further

ORDERED that Defendants' Motion for Summary Judgment on Lanham Act (Docket No. 919) is DENIED.

DATED February 6, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[28] *See* Fed. R. Civ. P. 501.

[29] *C.f. Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166-67 (10th Cir. 2003) (applying Oklahoma's expanded form of its litigation privilege to a claim of liable brought under Oklahoma law).