IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY and THE PROCTER & GAMBLE DISTRIBUTING CO.,<br><br>Plaintiffs,<br><br>vs.<br><br>RANDY L. HAUGEN, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR IMMEDIATE INQUIRY INTO POSSIBLE JURY MISCONDUCT, GRANTING PLAINTIFF'S MOTION TO STRIKE AND DENYING MOTION FOR ORAL HEARING ON POST TRIAL MOTIONS<br><br><br>Case No. 1:95-CV-94 TS |

I. INTRODUCTION

The general rule is "the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict."[1] Defendants argue that this case falls within an exception to the general rule on the issue of whether "extraneous prejudicial information

---

[1] *McDonald v. Pless*, 238 U.S. 264, 269 (1915).

1

was improperly brought to the jury's attention."[2]  Because the proffered juror statements do not show any juror exposure to extraneous information, Defendants may not use the juror statements to attempt to impeach the verdict.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

After many years of litigation and three appeals, the jury heard this case over the course of a two-week trial.  At the close of the evidence, the jury found in favor of Plaintiff and awarded damages in the amount of $19,250,000.  After returning its verdict, the jury was polled in open court.  Each juror individually affirmed that the verdict was their true and correct verdict.

About a week later, Defendants filed the present Motion for Immediate Inquiry into Possible Jury Misconduct.  Attached to the Motion were affidavits from Jurors Nos. 4, 5, and 8.  Juror No. 4's affidavit had one typewritten paragraph crossed out and a significant paragraph inserted by hand.

At the same time, the Court received by mail a copy of Juror No. 4's Affidavit, including the handwritten addition, and a letter from Juror No. 8.[3]  The letter from Juror No. 8 was sent directly to the Court and contained statements at variance with the statements in her Affidavit.[4]  Subsequent to Plaintiff's objection to the consideration of unsworn

---

[2] Fed. R. Evid. 606(b)(1).

[3] Sealed Docket No. 1153 (Juror No. 4's Affidavit) and Sealed Docket No. 1154 (letter from Juror No. 8). Mindful of the jurors' privacy, the Court filed these two documents under seal and refers herein to the jurors by their juror numbers.

[4] *Compare* Sealed Docket No. 1154, at 1 Letter from Juror No. 8 (fourth paragraph) and 2 (first partial paragraph) with Docket No. 1156, Ex. C, Affidavit of Juror No. 8 at 2, ¶¶ 8 and 6.

affidavits, Defendants submitted sworn copies of the affidavits of Jurors Nos. 4 and 5,[5] but did not submit a sworn copy of Juror No. 8's affidavit. The Court will refer to the affidavits and the letter collectively as the juror statements.

After Defendant's counsel had already conducted their own "inquiry" of an unknown number of the jurors,[6] during which counsel explained Defendants' position to at least one of the juror-affiants[7] and obtained the affidavits from three of the jurors, Defendants requested that the Court prohibit any other party contact with the jurors.[8] Plaintiff stipulated to the no-contact request.

Defendants argue that the juror statements show they received extraneous information, misread or ignored the instructions, and rendered a quotient verdict. Based upon the juror statements, Defendants seek to have the Court conduct an inquiry on "possible jury misconduct," namely whether the jury relied upon extraneous prejudicial information and whether the verdict was a quotient verdict.

---

[5]Docket No. 1187, Exs. A and B.

[6]Defs.' Mem. at 3 (representing that in the course of counsel's inquiry, "Counsel for Defendants then followed-up with [Juror No. 5]; they also contacted other jurors, seeking corroboration of [Juror No. 5's] statements and additional information.").

[7]Juror No. 8 Letter, at 1, ¶ 5 ("Learning from [Defendant's counsel] Mr. McCormack that legal fees may be considered over and above [the verdict,] the damages that we awarded became a concern to me."). This portion of the juror statement does not fall within Rule 606(b) because it involves an event after trial.

[8]Defs.' Mem. at 10 ("In order to preserve the sanctity and objectivity of the inquiry, Defendants . . . request that all parties be precluded from contacting jurors pending completion of the court's inquiry.").

Defendants subsequently filed other post-trial motions, including objections to Plaintiff's Bill of Costs.  Defendants move for oral argument on all of the post-trial matters on the grounds that the matters are all interrelated.  Defendants also argue that the reasons they seek oral argument should be maintained under seal.[9]  Plaintiff moves to strike the juror statements as filed in violation of Rule 606(b) and opposes setting the post-trial matters for oral argument.

The Court agreed to consider all post-trial matters together, including the objections to the Bill of Costs.  Having considered the entire record in this case, the Court rules herein on the Motions relating to the juror statements and the request for a hearing.  By separate orders, the Court will address the post-trial motions and the objection to the Bill of Costs.

### III.   NO EXTRANEOUS INFORMATION

Federal Rule of Evidence 606(b) provides:

606(b) Inquiry into validity of verdict or indictment.

Upon an inquiry into the validity of a verdict . . . , a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, . . ..  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.[10]

---

[9] *See, e.g.*, Defs.' Reply in Supp. of Mot. for Oral Argument, at 3.

[10] Fed. R. Civ. P. 606(b) (emphasis added).  The other two exceptions contained in Rule 606(b) are not relevant to this case.

Extraneous matters within the meaning of Rule 606(b) do not include the type of "general knowledge, opinion, feelings and bias that every juror carries into the jury room."[11] "A juror's personal experience, . . . does not constitute 'extraneous prejudicial information.'"[12] Thus, the "general knowledge that every juror brings into the jury room by reason of the juror's life experience" is not extraneous.[13] For this reason, Rule 606(b) "bars proof that one or more jurors improperly speculated on extrarecord matters such as the impact of . . . contingent fees" on the verdict.[14] Similarly, "jurors cannot be heard to testify that while the substance of the verdict returned into court was understood, it was predicated upon a mistake of the testimony, a misrepresentation of the law, unsound reasons or improper motives."[15]

---

[11] *Fields v. Brown*, 503 F.3d 755, 781 (9th Cir. 2007) (quoting *Hard v. Burlington Northern R.R. Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989) ("The type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room.") and *United States v. Johnson*, 495 F.3d 951, 982 (8th Cir. 2007) (holding jurors' impressions regarding the appellate process, although they "may be incorrect and taking such opinions into account may even, in some circumstances, be improper" such jury discussion of impressions does not involve extraneous information)).

[12] *Marquez v. City of Albuquerque* 399 F.3d 1216, 1223 (10th Cir. 2005).

[13] *Stewart v. Amusements of Am.*, 1998 WL 406868, *4 (4th Cir. 1998) (holding that statements by juror who identified himself as a lawyer; stated the jury was not allowed to send notes to the judge indicating that it was deadlocked; and expressed his view that the jury needed to reach a compromise; all "fall squarely within the category of the type of general knowledge that every juror brings into the jury room by reason of the juror's life experience").

[14] Christopher B. Mueller and Laird C. Kirkpatrick, 3 Federal Evidence § 248 (2nd ed. 2007) (collecting cases).

[15] *Young v. United States*, 163 F.3d 187, 189 (10th Cir. 1947).

In *Marquez*, the Tenth Circuit held that alleged statements made by a juror during deliberations asserting personal knowledge of police dog behavior "did not constitute 'extraneous prejudicial information'"[16] even though the jury was deciding the reasonableness of the officer's order to his police dog to apprehend the plaintiff. In *Holden v. Porter*,[17] the Tenth Circuit found that one juror's alleged statement during deliberations that all persons in defendant's position at the time of the automobile accident ("military personnel in foreign service") carried liability insurance did not show extraneous and improper influence.[18] Accordingly, the Tenth Circuit held it was improper to allow jurors to testify regarding the matter or the effect, if any, such statements had on their deliberations.[19] In *Lohr v. Tittle*,[20] the record included juror depositions alleging that one juror made a statement during deliberations that he had visited the accident scene where he had observed that the traffic was slow.[21] The Tenth Circuit in *Lohr* noted that "whatever was said was confined to discussions with jurors and there were not extraneous matters injected into the case."[22]

---

[16] 399 F.3d at 1223 (citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 606.03(1)(b) (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2004).

[17] 405 F.2d 878 (10th Cir. 1969).

[18] *Id*. at 879.

[19] *Id.*

[20] 275 F.2d 662 (10th Cir. 1960).

[21] *Id*. at 667.

[22] *Id*.

In the present case, Defendants argue that the juror statements are admissible evidence because they allege extraneous prejudicial information that falls within the exception set forth in Rule 606(b)(1). Specifically, Defendants argue that the jurors' alleged discussion of the probable amount of legal fees[23] that Plaintiff had incurred is extraneous information. Plaintiff contends that the juror statements are inadmissible under Rule 606(b).

The Court finds the juror statements allege only that several jurors discussed with the other jurors their own past experiences with legal fees—matters within those juror's own general life experience. As determined in *Marquez*, such jurors' personal experiences are not extraneous information. Such an alleged discussion is also not an extraneous matter injected into the case because, as in *Lohr*, the alleged statements were confined to discussions amongst jurors during their deliberations. There is no allegation that a juror was told information about this case by a source outside of the jury during trial or that such outside information was thereafter conveyed to the other jurors.[24]

Similarly, unlike the case *Mayhue v. St. Francis Hosp. of Wichita, Inc.*,[25] cited by Defendants,[26] this case does not involve extraneous information in the form of a dictionary

---

[23] Docket No. 1187, Defs.' Opp. to Mot. to Strike, at 2.

[24] *See, e.g.*, *Southern Pac. Co. v. Klinge*, 65 F.2d 85, 87-88 (10th Cir. 1933) (holding that facts disclosed by juror affidavits should have been considered by the trial court as extraneous information because one juror told others he had, during a break in deliberations, verified with an outside source that defendant had been offered a certain settlement amount).

[25] 969 F.2d 919 (10th Cir. 1992).

[26] Defs.' Reply, at 7; Defs.' Reply in support of Mot. For New Trial, at 6-7.

definition of words in a note brought into the jury room by the foreperson and read by the foreperson to other jurors. In the present case, the Court finds that the alleged statements regarding the juror's personal experience with the hourly rates for lawyers or the high costs of legal fees are matters which fall within the general knowledge or opinion that every juror carries into the jury room by reason of their life experiences. Therefore, any alleged statements about the same do not show extraneous information within the meaning of Rule 606(b).

Defendants also contend that Rule 606(b) contains a large "gray area" of information falling between admissible information on extraneous matters and inadmissible information on the jury's mental processes.[27] Defendants contend that under *Olivas v. City of Hobbs*[28] "where the jury attaches its own meaning to a term undefined in the instructions and expresses that meaning to the court as the basis for the verdict . . . the trial court may not ignore it."[29]

*Olivas* does not stand for the proposition that the Court must consider the substance of any juror affidavit alleging that the jury attached its own meaning to a term undefined in the instructions. *Olivas* did not involve extraneous information considered by the jury.[30] Instead, it involved unique facts in that the jury's note in *Olivas* was rendered together with

---

[27]Defs.' Reply at 6-7.

[28]50 Fed. Appx. 936 (10th Cir. 2002).

[29]Defs.' Reply at 6 (quoting *Olivas*, 50 Fed. Appx. at 941).

[30]50 Fed. Appx. at 941.

and presented as part of the jury's verdict.[31] The note returned with the verdict stated the jury's definition of the term "planting evidence," the same issue the trial court had refused to answer the jury's question about during their deliberations. Thus, *Olivas* did not involve post-verdict juror affidavits on matters that would be inadmissible under Rule 606(b), and is not applicable to the present case.

Defendants also attempt to distinguish the controlling case law applying Rule 606(b) by contending that the jurors allegedly considered the extraneous matter of the necessity of legal fees. This is not an allegation that an extraneous matter within the meaning of Rule 606(b) was considered by the jury. Instead, it is an allegation that the jury misunderstood the instructions or the law on damages. Moreover, Defendants' attempted distinction is unavailing because Rule 606(b) bars juror testimony on "even serious errors or misunderstandings on points of law or the proper basis of decision."[32]

Defendants have failed to show extraneous information was improperly brought to the jury's attention as required under Rule 606(b) for the admission of the juror statements or live testimony. The alleged incident in this case is similar to the one discussed in

---

[31] *Id.* at 939.

[32] Christopher B. Mueller and Laird C. Kirkpatrick, 3 Federal Evidence § 248 (2nd ed. 2007) (collecting cases); *accord United States v. Miller*, 806 F.2d 223, 225 (10th Cir. 1986) (holding that, in the absence of a claim showing "external" interference with the jury's deliberative process, it was not error for trial court to refuse to conduct an inquiry of a juror who post-deliberations stated, among other things, she may have misunderstood the instructions); *Biocore, Inc. v. Khosrowshahi*, 80 Fed.Appx. 619, 625-26 (10th Cir. 2003) (noting juror statements have been held incompetent to show "misinterpretation of instructions") (quoting Advisory Committee Notes to the 1972 Proposed Rule 606(b) (citing *Farmers Co-op Elev. Ass'n v. Strand*, 382 F.2d 224, 230 (8th Cir. 1967))).

*Holden*, discussed above.[33]  As in *Holden*, the "incident complained of constituted no misconduct in fact."[34]  Therefore, because there was extraneous information, the Court need not consider the prejudicial prong.

## IV.  NO QUOTIENT VERDICT

In the alternative, Defendants request that the Court conduct an examination of the jurors to determine whether there was an improper quotient verdict.  A quotient verdict is one in which the jury agrees in advance to be bound by the result to be obtained by division (the quotient) in advance of knowing the result of its arithmetic.[35]  As noted in *E.L. Farmer & Co. v. Hooks*,[36] jurors sometimes employ "the process of addition and division" as a method of bringing themselves to agreement.[37]  Such process is not improper if, after the quotient is known, "each juror for himself agrees severally and collectively that the sum reached in that manner shall be carried forward into the verdict."[38]  "The vice which renders a verdict subject to impeachment on the ground of being a quotient verdict is an agreement in advance to accept the amount as the verdict, without subsequent consideration."[39]

---

[33] 405 F.2d at 879.

[34] *Id.*

[35] *National R.R. Passenger Corp. v. Two Parcels of Land One 1691 Sq. Foot More or Less Parcel of Land in Town of New London, New London County and State of Conn.*, 822 F.2d 1261, 1268 (2nd Cir. 1987).

[36] 239 F.2d 547 (10th Cir. 1957).

[37] *Id.* at 554.

[38] *Id*.

[39] *Id*.

Although a true quotient verdict would be improper, the Supreme Court has definitively ruled in *McDonald v. Pless*,[40] that a juror's testimony, by affidavit or otherwise, may not be received into evidence on the manner in which the verdict was reached where "a private party is seeking to use a juror as a witness to impeach the verdict."[41]  This rule and the public policies it promotes are embodied in Rule 606(b).[42]  The statement in *McDonald* of the public policy reasons for this rule is, as noted by the Tenth Circuit, oft-quoted:

> But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding.  Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.  If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.[43]

The Tenth Circuit reiterated the *McDonald* rule in *E.L. Farmer & Co. v. Hooks*.[44]  In *E.L. Farmer*, the Tenth Circuit acknowledged that the testimony of the jurors could not be

---

[40] 238 U.S. 264.

[41] *Id*. at 269.

[42] Rule 606, Advisory Committee Notes to the 1972 Proposed Rules.

[43] *Holden*, 405 F.2d at 879 (quoting *McDonald*, 238 U.S. at 267-68).

[44] 239 F.2d at 553 ("Based upon considerations of sound public policy, it is the well established rule that ordinarily jurors in the United States Court will not be heard to give testimony, either oral or by affidavit, for the purpose of impeaching the verdict returned where the facts sought to be shown are such that they essentially inhere in the verdict.").

11

used to establish a quotient verdict, and then considered the different question of whether work sheets and scraps of paper allegedly picked up from the wastebaskets and elsewhere in the jury room after deliberations established that there had been a quotient verdict.[45] The Tenth Circuit declined to reach the issue of whether the work sheets and scraps were admissible because, even if they were, "standing alone [such evidence] was not sufficient to impeach the verdict."[46]  Contrary to Defendants' argument, there is simply no support in *E.L. Farmer* for the position that the Tenth Circuit "anticipated some circumstance where antecedent agreement [to be bound in advance by the quotient] could be proven by juror statements."[47]

> Among the numerous evils Rule 606 attempts to avoid, the Advisory 1974 Enactment mentions 'the possible exploitation of disgruntled or otherwise badly-motivated ex-jurors." Even assuming that jurors can accurately remember and state the basis for their verdict, there is no reason to suppose that every juror's casual after-the-fact explanation will be fully reliable.[48]

In light of the venerable, clear, and controlling law on this issue, it is troubling that Defendants chose to submit and rely on inadmissible juror affidavits[49] attempting to show

---

[45]*Id*. at 553-54. The affidavits in *E.L. Farmer* were those of appellant's attorney and claims representative regarding the source of the "so-called work sheets and scraps of paper."  *Id.*

[46]*Id*.

[47]Defs.' Mem. at 9 n.4.

[48]*Biocore*, 80 Fed.Appx. at 625-26.

[49]*See United States v. Voigt*, 877 F.2d 1465, 1469 (10th Cir. 1989) (finding counsel's apparent request that Tenth Circuit disregard Rule 606(b) and conduct an inquiry based upon alleged juror statements to be "specious and frivolous" in the absence of evidence of extraneous prejudicial information improperly brought to the jury's attention).

a quotient verdict.[50]  This is especially true in view of the fact that the jury was polled in open court.

Because jurors may not offer testimony on any matter occurring during the course of the jury's deliberations and their written statements on these same matters may not be received in evidence, Defendants cannot impeach the verdict on the ground that it was an alleged quotient verdict.

V.  AFFIDAVITS TO BE STRICKEN

Plaintiff moves to strike the juror statements as inadmissible under Rule 606(b). The Court finds It would not be necessary to strike the juror statements if they only related to Defendants' attempt to show extraneous information was improperly brought to the jury's attention—an express exception to Rule 606(b)'s prohibition against the use of juror testimony.  But the record reveals that the Defendants also attempt to use the juror statements as their testimony on the following matters expressly prohibited by Rule 606(b):[51]  To establish a quotient verdict by means of statements occurring during the course of the jury's deliberations.[52] To establish a lack of unanimity by means of

---

[50] The Court further notes that the only juror communication that was not filtered through the losing parties—the letter from Juror No. 8—does not support Defendants' argument regarding a quotient verdict. *See* Sealed Docket No. 1154 at 1, ¶ 4 ("I believe we all agreed . . .") and 2, ¶ 1 ("Every juror, at the end of deliberation, agreed individually . . . that the $19,250,000 was a fair amount in damages.").

[51] Docket Nos. 1161 (Defs.' Mot. For a New Trial), 1162 (Mem. in Supp.), at 1 n.1-5 (quoting affidavits).

[52] *See, e.g.*, Docket No. 1162, Defs.' Mem. in Supp., at 2-3.

13

statements occurring during the course of the jury's deliberation.[53] To show the effect of different instructions on one juror's mind or as influencing that juror's or any other juror's mind to assent to the verdict.[54] To show statements and matters occurring during the course of the jury's deliberations and the jurors' mental processes in an attempt to impeach the verdict on the ground that jurors "either misunderstood, were mislead by, or ignored an instruction."[55] To show the jurors' mental processes in assenting to the amount of the damages award.[56] All of these purposes are prohibited by Rule 606(b) as explained in the Rule's Advisory Committee's Notes:

> Under the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process. Thus testimony or affidavits of jurors have been held incompetent to show a compromise verdict; a quotient verdict, speculation as to insurance coverage; *misinterpretation of instructions*, mistake in returning verdict, [and the] interpretation of guilty plea by one defendant as implicating others.[57]

---

[53] *Id*. at 2.

[54] *See, e.g.,* Docket No. 1194, Defs.' Reply at 9 and n.14 (quoting and relying on juror's affidavit regarding the alleged effect of a particular instruction on his verdict and that of other jurors).

[55] *Id.* at 9 (arguing that three statements of jurors establish what the jury meant by its award of damages).

[56] Docket No. 1159, at 10 (arguing evidence of out-of-pocket expenses insufficient to support damage award).

[57] Advisory Committee Notes to the 1972 Proposed Rules as quoted in *Biocore*, 80 Fed.Appx. at 625-26 (emphasis added and internal citations omitted).

The Court finds that all of the matters set forth in the juror statements fall within the scope of evidence prohibited by Rule 606(b) because they involve alleged "statements occurring during the course of the jury's deliberations," the "effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment," or concern a juror's alleged "mental processes in connection therewith." Defendants' attempt to use the juror statements for the purposes clearly and expressly prohibited by Rule 606(b) implicates the concerns for juror harassment and for the "destruction of all frankness and freedom of discussion and conference" set forth above from *Holden* and *McDonald*.[58] Although Defendants do not appear to consider that they are bound by either the plain language of Rule 606(b) or over ninety years of controlling case law, this Court is bound by that controlling law. The law is clear that, absent extraneous information improperly brought to the jury's attention, the juror statements are, in the words of the Tenth Circuit in *Holden*, "totally incompetent evidence in law."[59]

Accordingly, the Court will grant the Motion to strike the juror statements. The juror statements will remain in the record for the purposes of appeal but the Court will not consider them for any purpose other than its determination, above, on the issue of alleged extraneous information improperly brought to the jury's attention.

## VI. REQUEST FOR HEARING

---

[58] 405 F.2d at 879 (quoting 238 U.S. at 267-68).

[59] 405 F.3d at 879 (discussing trial court's reliance on juror's testimony at hearing on losing party's motion for a new trial).

Defendants requested a hearing on the Motion regarding their allegation of juror misconduct. Defendants are apparently under the impression that the rule against juror's testifying regarding matters set forth in Rule 606(b) does not apply to testimony in response to the Court's questions. That impression is incorrect. In *Holden*, the trial court held such a hearing and as noted above, the Tenth Circuit found the testimony of the jurors was "totally incompetent in law."[60] Further, in *United States v. Miller*,[61] the Tenth Circuit held that where the party seeking to challenge the verdict does not establish "external' interference with the jury's deliberative process," it was within the trial court's discretion to decline to hold an evidentiary hearing or inquire of jurors.[62] Similarly, in *Tanner v. United States*,[63] the Supreme Court extensively examined the history and purpose of the present version of Rule 606(b) and found no error in a trial court's decision, "based upon the inadmissibility of juror testimony and clear insufficiency of [proffered] nonjuror evidence,"

---

[60]*Id*.

[61]806 F.2d 223 (10th Cir. 1986).

[62]*Id*. at 226; *accord Dunne v. Libbra*, 448 F.3d 1024, 1029 n.6 (8th Cir. 2006) (holding that where the parties "seeking to question jurors present[] no evidence the verdict was tainted by extraneous information or outside influence, the request for a hearing is properly denied") (citing *United States v. Tran*, 122 F.3d 670, 672-73 (8th Cir. 1997) (holding evidence that jury improperly commented upon and drew negative inference from defendant's failure to testify did not justify evidentiary hearing because it did not establish extraneous information)).

[63]483 U.S. 107 (1987).

to refuse to hold a post-verdict evidentiary hearing on the issue of alleged juror alcohol and drug use during trial.[64]

As discussed above, Defendants' allegations do not show extraneous prejudicial information was improperly brought to the jury's attention. Therefore, it would be "futile" to hold an evidentiary hearing because in the absence of such external information, no juror may testify regarding matters prohibited by Rule 606(b).[65]

Defendants also seek a hearing on all post trial motions on the basis that this district's restrictive page limitations prevented them from fully addressing the issues, the motions are interrelated, and financial considerations for the Defendants. The standard page limitations are not a basis for a hearing. The parties have made clear the interrelation of the motions and, as noted above, the Court agreed to considered them together. The Court has considered the record and does not find that hearings on the post-trial motions would assist the Court.

## VII. CONCLUSION AND ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendants' Motion for Immediate Inquiry into Possible Jury Misconduct (Docket No. 1155) is DENIED. It is further

---

[64]*Id*. at 119-27. In *Tanner*, the defendants' counsel obtained a recorded statement from a juror supporting defendants' allegations of juror drug and alcohol use. *Id*. at 115. Nonetheless, the Supreme Court held it was not error to refuse to hold an evidentiary hearing where the juror statements were inadmissible and no other admissible evidence supported the allegations.

[65]*Marquez*, 399 F.3d at 1223.

ORDERED that Plaintiff's Motion to Strike Juror Affidavits (Docket No. 1172) is GRANTED. It is further

ORDERED that Defendants' Motion for Hearing (Docket No. 1200) is DENIED.

DATED this 17th day of June, 2008.

BY THE COURT:

*[signature]*

TED STEWART
United States District Court Judge