IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, et al., <br><br> Plaintiffs, <br><br><br><br><br><br> vs. <br><br><br> RANDY L. HAUGEN, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND DENYING DEFENDANTS' MOTION FOR NEW TRIAL <br><br><br><br><br> Case No. 1:95-CV-94 TS |

I. INTRODUCTION

Defendants renew their Motion for Judgment as a Matter of Law and also move for a new trial. Defendants argue, as they did at trial, that Plaintiff has not proven its case, and specifically, has not proven damages. Defendants also rely on juror statements[1] obtained after the verdict was rendered. The factual and procedural background of the trial and jury

---

[1] Defendants also cite to a letter written to the Court by one of the juror/affiants, clarifying an earlier affidavit by that juror. The Court refers to the affidavits and the letter collectively as the juror statements.

verdict in favor of Plaintiff is set forth in the Court's Memorandum Decision and Order regarding the juror statements (Order on Juror Statements) and need not be repeated here.

Having stricken the juror statements as required by Fed. R. Evid. 606(b), the Court finds that there is sufficient evidence to support the verdict, the instructions were proper, and denies the Motions.

## II.   MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants renew their Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b).  Defendants contend that Plaintiff failed to establish damages and that the Amvox Message was not sufficiently disseminated to constitute commercial advertising or promotion.   Defendants also seek remittitur.

> Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party. . . .   The jury verdict must be upheld unless it is "clearly, decidedly, or overwhelmingly" against the weight of the evidence. We consider the evidence in the light most favorable to the prevailing party.[2]

In making this determination, the Court may "not weigh the evidence, judge witness credibility or challenge the factual conclusions of the jury."[3]

---

[2]*Chaffin v. Union Pacific R. Co.*, 192 Fed. Appx. 739, 746 (10th Cir. 2006) (quoting *Escue v. N. Okla. College*, 450 F.3d 1146, 1156 (10th Cir. 2006);  *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996); and *Snyder v. City of Moab*, 354 F.3d 1179, 1187 (10th Cir. 2003) (internal quotation marks partially deleted)).

[3]*Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

Defendants contend that there was insufficient evidence of damages because Plaintiff failed to present evidence of actual consumer deception, proximate causation, and injury in fact.

Citing cases involving trademark infringement, Defendants argue that "[i]n order to recover damages on a Lanham Act claim, a "plaintiff must prove [that he or she] has been damaged by actual consumer confusion or deception resulting from the violation."[4]   Such "[a]ctual consumer confusion may be shown by direct evidence, a diversion of sales or direct testimony from the public, *or* by circumstantial evidence such as consumer surveys."[5] But the parties disagree on whether Plaintiffs' survey evidence (the Hauser testimony) was sufficient to show actual consumer confusion.

However, where, as in the present case, it is undisputed that the Amvox Message is literally false,[6] there is a presumption of actual consumer confusion and, where the presumption is unrebutted, Plaintiff need not present evidence on actual consumer confusion.[7]   Contrary to Defendant's argument,[8] this presumption applies to claims for

---

[4]*Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987).

[5]*Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (quoting *Brunswick*, 832 F.2d at 525) (emphasis added).

[6]*See, e.g.*, Docket No. 983, Summary Judgment Order, at 3 (noting that Defendants admit that they sent the Amvox Messages containing the rumor and that the rumor was false).

[7]5 J. McCarthy, McCarthy on Trademarks and Unfair Competition §27:55, p. 27-112-115 (4th ed. 2007)(hereinafter McCarthy).

[8]Def.s' Mem. at 5.

3

monetary recovery.[9]   Neither *Brunswick* nor *Australian Gold*, cited by Defendants in support of their position that the presumption only applies in injunction cases involved a literally false statement, and, therefore, neither involved the presumption of consumer confusion or deception arising from a literal false statement.[10]

In the First Circuit case *Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave*,[11] the court held that because a defendant does not dispute that the statement is a literal falsity claim, the presumption of consumer deception in plaintiff's favor and the defendant's failure to present evidence to rebut the presumption satisfied the plaintiff's burden of demonstrating consumer deception on its claim.   Similarly, in the present case the presumption of consumer confusion arising from the literally false statement was unrebutted.   Defendants argued that Dr. Hauser's survey evidence, the only evidence on the issue, was not sufficient, but presented no evidence of their own to rebut either the presumption or the Hauser testimony.   Therefore, the presumption by itself is sufficient for Plaintiff to meet its burden of demonstrating consumer deception.[12]   Thus, "[i]n order to recover damages or obtain equitable relief under the Lanham Act, a plaintiff must also

---

[9]McCarthy § 27:55. at 27-112-14 (citing *Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave*, 284 F.3d 302, 314-316 (1st Cir. 2002)).

[10]Def.s' Mem. at 5 (citing *Brunswick*, 832 F.2d at 525 (finding reseller's use of plaintiff's mark was infringing) and *Australian Gold*, 436 F.3d at 1241 (finding competitor's use of reel design infringed trademark)); *see also Zoller Laboratories, LLC. v. NBTY, Inc.*,111 Fed. Appx. 978, 982-83 (10th Cir. 2004) (affirming denial of injunction because general rule regarding the presumption did not apply where trial court correctly found statement was not literally false by necessary implication).

[11]284 F.3d 302 (1st Cir. 2002).

[12]*Id*. at 315.

show that *either*: (1) the challenged advertisement is literally false, *or* (2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers."[13]

Defendants also contend that Plaintiff cannot establish its case unless Plaintiff also showed that an actual consumer's purchasing decision was affected.   In support, Defendants rely on two cases: *Hill's Pet Nutrition, Inc. v. Nutro Products, Inc.*,[14] and *Decorative Center of Houston, v. Direct Response Publications, Inc.*[15]   The Court finds these cases to be inapposite because they involve statements "which were not actually false, but arguably were misleading."[16]   Thus, both cases sought relief for false advertising under the Lanham Act based on an implied falsehood.[17]   The rule for seeking such relief based upon implied falsity is that the plaintiff "must set forth some evidence of actual consumer confusion resulting from the falsehood."[18]   But as cited above, an entirely different rule applies to the literally false Amvox Message in this case.

---

[13]*Avon Products, Inc. v. S.C. Johnson & Son, Inc.*,  984 F.Supp. 768, 796 (S.D. N.Y. 1997) (citing *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992)).

[14]258 F.Supp.2d 1197 (D. Kan. 2003).

[15]264 F.Supp.2d 535 (S.D. Tex. 2003).

[16]*Decorative Center*, 264 F.Supp.2d at 553; and *Hill's Pet Nutrition*, 258 F.Supp.2d at 1209 (finding challenged statement was not literally false and therefore, "if plaintiff is entitled to an injunction, it must be based on implied falsity, rather than literal falsity").

[17]258 F.Supp. 2d at 1211.

[18]*Id*.; 264 F.Supp. 2d at 553 (same).

Although the Court has determined that the unrebutted presumption of consumer confusion arising from the literal falsity of the Amvox Message was sufficient to establish consumer confusion, the Court will address Defendants' arguments on the survey evidence to the extent that Defendants argue the jury could not rely on the Hauser evidence in its determination of other issues such as materiality[19] and causation.  Defendants argue that Dr. Hauser's testimony is insufficient because he surveyed persons other than those who were known to actually have heard the Amvox message.  As this Court noted in its Order denying Defendants' *Daubert* challenge to the admissibility of Dr. Hauser's testimony, such challenges to the survey are credibility challenges for the jury to resolve.[20]

Having reviewed the record, the Court finds that there was no need for evidence on consumer confusion or deception because the unrebutted presumption arising from the literally false Amvox Message satisfied Plaintiff's burden to show consumer confusion or deception.  Further, the Court finds that even if there were not an unrebutted presumption, Dr. Hauser's testimony was sufficient to establish consumer confusion or deception.

Defendants next argue there was insufficient evidence of proximate causation and damages because Plaintiff's case relied merely upon "the chronology of events." Defendants cite *Decorative Center*, and a Fifth Circuit case cited therein, *Seven Up Co.*

---

[19]Some courts also apply a presumption of materiality upon a finding of literal falsity.  *See, e.g.*, Richard J. Leighton, Literal Falsity by Necessary Implication: Presuming Deception Without Evidence in Lanham Act False Advertising Cases, 97 Trademark Rep. 1286, 1291 n.19 (2007) (citing cases).

[20]Docket No. 1090, at 5.

*v. Coca Cola Co.*,[21] for the proposition that "an inference of causation based merely on the chronology of events was not a reasonable one for the jury to make."[22]  Defendants argue that, as in *Decorative Center*, Plaintiff's evidence was based solely on chronology.  Plaintiff disagrees.  Plaintiff cites the evidence it presented at trial and argues such evidence is sufficient to establish damages under the Tenth Circuit's *Brunswick* case.

In contrast to the undisputed testimony showing no connection to damages in the *Seven Up* case,[23] and the lack of evidence presented in the *Decorative Center* case, in this case Plaintiff presented the following: evidence of the false Amvox Message targeting a specific list of products; evidence, including the Hauser survey, that purchasing decisions were affected; evidence (the Rosen testimony) that sales of those specific products grew at a substantially lower rate than Plaintiff's other products as a result of Defendants' dissemination of the false statements; and evidence of the damages Plaintiff incurred as a result of the false statement.  Thus, unlike the cases relied upon by Defendants, there is evidence other than a mere chronology.

---

[21]86 F.3d 1379, 1389 (5th Cir. 1996).

[22]*Decorative Center*, 264 F.Supp.2d at 556.

[23]*See, e.g., Seven Up*, 86 F.3d at 1388-89 (noting there was no evidence of what portions of the allegedly misleading statements were actually communicated). In contrast, in the present case, there was undisputed evidence of the contents of the Amvox Message, and, therefore, the exact admittedly false information communicated in connection with specific products.

In the *Brunswick* case relied on by Plaintiff, there was evidence of other possible causes for the decline in sales of the targeted product, namely other competing products[24] and a recession.[25]  The Tenth Circuit held that despite the evidence of other possible causes and the fact that it was not possible to ascertain damages exactly, it was error to refuse to grant damages where the Plaintiff submitted evidence such as comparative declines in product sales.[26] Similarly, in the present case there was evidence of other possible causes for the substantially lesser growth rate of the targeted products, including other consumer concerns reported to the call center and other rumors.  The jury weighed that evidence along with the rest of the evidence to determine causation and damages.

Defendants also argue that the Rosen evidence is not sufficient for a number of reasons.  The Court extensively examined Defendants' arguments regarding the validity of the Rosen testimony in its Order denying Defendants' *Daubert* challenge to Dr. Rosen's testimony.[27]  The Court will unseal that Order because the matters therein were fully explored during the public trial.

Reviewing the Rosen testimony, the Court finds that Defendants' arguments regarding its alleged deficiencies to show causation and damages were fully explored at

---

[24]*E.g.*, *Brunswick*, 832 F.2d at 525 (finding that evidence that the introduction of other competing products "to the market may have contributed to the decrease in [the plaintiff's] sales" did not, in light of findings of actual confusion and direct competition, "indicate that [the plaintiff] failed to show it suffered actual damages").

[25]*Id*.

[26]*Id*. at 525-26.

[27]Docket No. 988.

8

trial.  The jury was entitled to determine the appropriate weight to apply to the Rosen testimony and Defendants' challenges thereto.  Defendants' theory that the jury could not find that damages were shown because Plaintiff remained highly profitable and because even the targeted products continued to gain market share is simply untenable.  The Lanham Act's protections are not limited to only unprofitable companies or to products that are experiencing a decline in sales, as was the case in *Brunswick*.  Logically, there is no reason why profitable companies or a product experiencing market growth would be immune from unfair competition.  A profitable company must establish it suffered quantifiable damages caused by the unfair competition to recover, not that it suffered a complete economic reversal.

In *Brunswick*, the Tenth Circuit held that there was sufficient legal basis for an award of damages where, among other things, there was evidence of "the difference in the decline of sales between" the infringed product and the decline in sales of the plaintiff's other products.[28]  Despite Defendants' attempt to highlight the factual differences between the facts of this case and the facts of the *Brunswick* case, it remains the most relevant case regarding damages.  Contrary to Defendants' argument, the evidence in *Brunswick* did not directly compare the relative sales rates between the pre-infringement and the post-infringement periods.  Instead, it considered the relative drop during a fiscal year, only the last five months of which involved alleged infringement.[29]  In *Brunswick* there was no

_____

[28]*Brunswick*, 832 F.2d at 526.

[29]*Id*. at 516 (noting Defendant began sales of infringing reel by February 1983) and 525 (noting evidence showed sales of infringed product dropped significantly more

evidence separating the relative sales of the infringed product and its non-infringed products between the time before the infringement (June 1982 through January 1983) and its sales after the infringement (February 1983 through July 1983).  Thus, Plaintiff's failure to produce evidence of the relative rates of growth of its targeted and non-targeted products in the period before Defendants' false statement does not distinguish *Brunswick*.  As stated in *Brunswick*:

> [I]n a case such as this, where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation.[30]

The facts of Plaintiff's profitability and the continued growth of the targeted products were fully developed at trial.  The Court finds the evidence of the difference between the growth of sales of the targeted products and those of Plaintiff's nontargeted products, together with the other evidence at trial, provided "a broad basis from which" the jury as finder of fact could "arrive at a fair, if not precise amount with which to compensate"[31] Plaintiff for what the jury found to be Defendants' unfair competition in violation of the Lanham Act.

The Court finds that there was ample evidence from which the jury could find causation and damages.

---

than non-infringed product during entire fiscal year ending July 1983).

[30]*Id*. at 526 (quoting *Bangor Punta Operations, Inc. v. Universal Marine Co., Ltd*., 543 F.2d 1107, 1110-11 (5th Cir. 1976) (further quotations omitted)).

[31]*Id*.

Defendants next contend that the Amvox Message was not sufficiently disseminated to the relevant purchasing public to constitute "commercial advertising or promotion" under the Lanham Act.  Defendants contend that because the market for Plaintiff's products is large, nationwide, and even worldwide, that their dissemination of the rumor through the Amvox Message system cannot be sufficient dissemination.  They contend that the evidence showed a limited distribution to only a few hundred or a few thousand persons. Plaintiff contends that the "relevant purchasing public" consists of Amway distributors, citing the following language from the Tenth Circuit's first opinion in this case *Procter & Gamble Co. v. Haugen, (Procter and Gamble I)*:[32] "there is a genuine issue of material fact as to the fourth element of a showing of 'a commercial advertisement or promotion' due to the uncertainty as to the number of Amway distributors-part of the 'relevant purchasing public.'"[33]  Defendants quote the same language and argue that the Tenth Circuit determined only that the Amway Distributors are "*part of* the 'relevant purchasing public.'"[34] In *Procter & Gamble I*, the court adopted the four-pronged test for commercial advertising and promotion from the case *Gordon & Breach Science Publishers v. American Institute of Physics*,[35] quoted more fully below in the discussion of Jury Instruction No. 15. Relevant for this discussion is the fourth prong providing that "while the representations need not be made in a classic advertising campaign, but may consist instead of more

---

[32] 222 F.3d 1262 (10th Cir. 2000).

[33] *Id*. at 1274 n.9.

[34] *Id*. (emphasis added).

[35] 859 F.Supp. 1521 (S.D.N.Y. 1994).

informal types of promotion, the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry."[36]

In *Sports Unlimited, Inc. v. Lankford Enterprises*,[37] the Tenth Circuit further expanded on the fourth prong:

> We acknowledge that "the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion'. . .." Furthermore, we assume, arguendo, that the extent of distribution necessary to constitute commercial advertising or promotion in a particular case may be an elastic factor, *so that a relatively modest amount of activity may be sufficient in the context of a particular case*. *See American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.*, 820 F.Supp. 1072, 1078 (N.D. Ill. 1993) ("The level of circulation required to constitute advertising and promotion will undeniably vary from industry to industry and from case to case."). Nevertheless, these terms by their plain, everyday meaning connote *some* level of public dissemination of information.[38]

In *Seven Up Co. v. Coca Cola Co.*,[39] the Fifth Circuit case relied upon by Defendants, the court focused on the relevant market as defined by the defendant therein as the market the defendant sought to target for its intermediate product and the nature of the industry.[40]   In *Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, the trial court

---

[36]*Id*. at 1536 (quoted and adopted in *Procter & Gamble I*, 222 F.3d at 1274). This language was quoted in Instruction No. 18.

[37]275 F.3d 996 (10th Cir. 2002).

[38]*Id*. at 1004-05 (quoting *Gordon & Breach*, 859 F.Supp. at 1536 (quoted in *Procter & Gamble Co.*, 222 F.3d at 1274)).  *See also* Instruction No. 18, quoted below (using same language) (emphasis added).

[39]86 F.3d 1379.

[40]*Id*. at 1387 (holding that design and presentation of materials to only a few of approximately 70 independent bottlers did "not constitute merely isolated, individual

examined the question of sufficient dissemination.[41]  The counterclaim defendant in *Avon Products*,[42] like Defendants herein, were in the direct marketing industry.[43]

The *Avon Products* trial court held that "despite the fact that the members of the relevant purchasing public indisputably number in the millions," in the context of a business that relies exclusively upon promotion by its sales representatives" distributing about 100 lists with the information in a distributor organization of several hundred thousand people "constitutes advertising and promotion under the Lanham Act."[44]  That finding was based upon factual findings that are equally applicable to this case.

As in *Avon Products*, the Amvox Message in this case "clearly had limited but significant distribution."[45]  In this case, the Amvox program was an established product promotion mechanism used successfully by Defendants in their businesses.  Using that system, Defendant Haugen forwarded the Amvox Message to his "frontline distributors," including Defendants Brady, Walker, and Bybee.  Those Defendants in turn forwarded it to their frontline distributors.  In Defendants' direct marketing business it was expected that

---

statements of opinion by a single sales representative to a single customer" and, therefore, were sufficiently disseminated to relevant purchasing public to constitute commercial advertising or promotion).

[41]984 F.Supp. at 795-96.

[42]The Lanham Act unfair competition claim in *Avon Products* was brought as a counterclaim. *Id.* at 771.

[43]*Id.* at 772-73 (explaining Avon's sales structure).

[44]*Id.* at 796-97.

[45]*Id.*

each frontline would then immediately pass the message on down through the marketing levels to reach and motivate the broadest possible audience.  There was evidence that the use of the system was successful, the information was spread throughout Haugen's network of 60,000,[46] 10,000 of whom had Amvox, then spread through many states, crossed over into two other distributor networks, where it was spread further.  There is evidence that not all the people in the downline received the attempted retraction.  Among the evidence showing the rapid dissemination of the Amvox Message was the strong spike in consumer calls.

As in *Avon Products*, there was evidence in the present case that the message was spread further through means in addition to the original Amvox Message.[47]  There was evidence that the Defendant's message was spread further through contact with churches, where it was announced from the pulpit, and through the printing and distribution of flyers.

As in *Avon Products*, there was evidence that a significant number of consumers were influenced by the false message.  That evidence included, significantly, that the sales of the targeted products had a drop in growth rate that could be correlated to the spread of the information by Defendants through their Amvox Messages.

Defendants contend that *Avon Products* is not controlling authority and that it is contrary to Tenth Circuit case law.  It is true that *Avon Products* is not controlling case law.

---

[46]*See, e.g.*, Pl.'s Ex. 30 (memorializing conversation between Defendant Haugen and Amway regarding rumor "running rampant" through Haugen's group and directions for corrective action).

[47]In *Avon Products*, in addition to the lists at issue, there were promotional materials such as buttons, flyers, tee-shirts and business cards.  984 F.Supp. at 796.

Nonetheless, the Court finds it persuasive because it analyzes dissemination through the same industry—direct marketing.  The Court finds *Avon Products* does not conflict with Tenth Circuit case law such as *Sports Unlimited*, quoted above, which emphasized that an individualized determination must be made which will vary from industry to industry and from case to case, and may be modest, but significant.

The issue is not, as Defendants argue, whether any specific percentage of the customers in this nation's consumer goods market received the Amvox Message.[48]  Under Defendants' reasoning, when the company was as large as Plaintiff, nothing short of an advertisement during the Super Bowl could be found to have reached a large enough percentage of customers to be disseminated sufficiently to establish a Lanham Act violation.  Instead, the  issue is whether the information was disseminated "sufficiently" to the relevant market segment—in this case the market in which Defendants competed with Plaintiff for customers— to constitute advertising or promotion within the particular industry.

As in *Avon Products*, the Court finds that although the relevant purchasing public is in the millions, there was evidence before the jury supporting a finding that Defendants' Amvox Messages' limited distribution was nonetheless significant in the relevant market. Defendants dispute the evidence and the nature of the inferences such evidence could support, but weighing of evidence, credibility of witnesses and inferences to be draw from evidence were all the province of the jury.  The Court finds that there was evidence to

---

[48]Docket No. 1197, Def.s' Reply at 10.

support the jury's determination that the Amvox Message was sufficiently disseminated to the relevant purchasing public to constitute "commercial promotion" under the Lanham Act.

The Court finds that Plaintiff presented sufficient evidence on each element of its Lanham Act claim for a reasonable jury to find in its favor.  Therefore, Defendants' Renewed Motion is denied.

### III.   MOTION FOR A NEW TRIAL

Defendants seek a new trial based upon "juror misconduct," "jury confusion," improper jury instructions, and evidentiary rulings.  Plaintiff contends that there is no admissible evidence of juror misconduct, no instructional error, and no error in the evidentiary rulings.

> Rule 59(a) of the Federal Rules of Civil Procedure provides a "new trial may be granted to all or any of the parties on all or part of the issues . . . in an action in which there has been a trial by jury. . . ."  Such a motion is "generally not regarded with favor, and is granted only with great caution."  The party seeking to set aside a jury verdict must show either trial error which constitutes prejudicial error or that the verdict was not based on substantial evidence.[49]

> When reviewing an allegation that a jury's verdict was not supported by evidence, we view the record in the light most favorable to the prevailing party.  A motion for a new trial on the ground that the verdict is against the weight of the evidence presents a question of fact, not law, and we will not reverse unless the verdict is "clearly, decidedly, or overwhelmingly against the weight of the evidence."[50]

---

[49] *Smith v. Cochran*, 182 Fed. Appx. 854, 864 (10th Cir. 2006) (quoting *United States v. Perea*, 458 F.2d 535, 536 (10th Cir. 1972) (other citation omitted)).

[50] *Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir. 1996) (quoting *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 616-17 (10th Cir. 1984) (additional citation omitted)).

Jury instructions are reviewed as a whole to determine whether they "correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards."[51]

Defendants first argue that a new trial should be granted on the grounds of "jury misconduct."   For the reasons stated in its Order on Juror Statements the Court has (1) determined that there is no juror misconduct in the present case, (2) determined that Defendants failed to show the jury relied on external information, and (3) struck the juror statements because Defendants are attempting to use them for purposes prohibited under Fed. R. Evid. 606(b).

Defendants also contend that Tenth Circuit case law requires a new trial because the jury applied its own definition to terms in the instructions, specifically to "out-of-pocket" expenses.  This argument is based on the inadmissible juror statements regarding matters and statements purportedly occurring during the course of the jury's deliberations. Defendants rely on two cases, *Mayhue v. St. Francis Hospital of Wichita, Inc.*,[52] and *Olivas v. City of Hobbs*,[53] in support of this argument.

As discussed at footnote 25 of the Order on Juror Statements, the *Mayhue* case involved a completely distinguishable fact situation.  In *Mayhue*, the trial court denied the

---

[51]*Scottsdale Ins. Co. v. Tolliver,* 2008 WL 681676, 5 (10th Cir. 2008) (quoting *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) (reviewing claimed error in jury instructions on burden of proof)).

[52]969 F.2d 919, 925-26 (10th Cir. 1992).

[53]50 Fed. Appx. 936 (10th Cir. 2002).

jury's request for a dictionary during their deliberations.  Despite this denial, the jury foreperson wrote out, brought into the jury room, and read to several other jurors, a note containing definitions of several words which she had presumably obtained from a dictionary.[54]  The definitions on the note did not accurately reflect applicable law as set forth in the instructions.[55]  The Tenth Circuit affirmed the trial court's determination that the "jury's unauthorized consultation of a dictionary" was prejudicial extraneous information sufficient to warrant granting a new trial.[56]  Because *Mayhue* involved extraneous prejudicial information considered by the jury, *Mayhue* does not, as argued by Defendants, support the position that "courts can grant a new trial when evidence submitted indicates the jury relied on definitions in addition to or in conflict with those provide by the court."[57] In contrast to *Mayhue*, in the present case there was no extraneous information.

Similarly, *Olivas* is distinguishable.  In *Olivas*, when the jury returned a verdict, the verdict was accompanied by a note from the jury noting that a term, "planting evidence," was not defined in the instructions and stating the jury's definition of that term—which definition reflected a theory of liability not presented by the plaintiff at trial.[58]  The trial court

---

[54]*Mayhue*, 969 F.2d at 922 n.4. However, the Tenth Circuit pointed out that regardless of their source, the note and definitions were extraneous information brought into the jury room by the foreman. *Id*.

[55]*Id*. at 924-25 (applying considerations "relevant in an analysis of whether the presumption of prejudice ought to be rebutted when a jury consults a dictionary or dictionary definition without authorization").

[56]*Id*. at 924.

[57]Def.s' Reply at 7, n.12.

[58]50 Fed. Appx. at 939.

had previously denied the jury's request to define the term. The trial court found that the adopted definition transcended the plaintiff's theory of liability, "demonstrated at least that the jury misunderstood the factual predicate" of the claim, and "left the verdict unclear as to whether the jury followed the proper law as instructed by the Court." Accordingly, the *Olivas* trial court ordered a new trial.[59]

The Tenth Circuit affirmed, emphasizing the unique nature of the facts: "where the jury attaches its own meaning to a term undefined in the instructions and expresses that meaning to the court as the basis for the verdict."[60] As an unpublished case, *Olivas* is not binding precedent.[61]

The most important way in which *Olivas* is distinguishable is, as discussed in the Order on Juror Statements, that the jury's note in *Olivas* was rendered together with and presented as part of the jury's verdict. Thus, *Olivas* is a very different situation from that involved in the present case which is subject to the venerable rule on the inadmissibility of juror statements regarding "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or

---

[59]*Id*. at 941.

[60]*Id*.

[61]As a 2002 case, *Olivas* was subject to former 10th Cir. Rule 36.3 which provided citation of an unpublished case was disfavored. *But see* current 10th Cir. R. 32.1 (a) (providing "unpublished decision are not precedential, but may be cited for their persuasive value" and making rule applicable to cases issued prior to the January 1, 2007 effective date of Fed. R. App. P. 32.1(a) (providing courts may not restrict citations of written dispositions designated "non-precedential" if those dispositions were issued after January 1, 2007)).

emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith."[62]   As was reaffirmed by the Tenth Circuit in *Biocore, Inc. v. Khosrowshahi*,[63] an unpublished case decided the year following *Olivas*, affidavits of jurors have been held to be incompetent to show "misinterpretation of instructions."[64]  In *Biocore*, as in the present case, the defendant argued the jury based its damages award on a misunderstanding.   The Tenth Circuit accepted the trial court's explanation that it had not relied on the juror's statements that they considered an impermissible basis for the award of damages when the trial court granted a new trial on the issue of damages.[65] But despite the trial court's explanation, the Tenth Circuit nonetheless found that the trial court erred in granting a new trial on the basis that the jury's damage award was not supported by the evidence.[66]  The Juror Statements in the present case are similar to those held to be inadmissible in *Biocore*, and have been stricken.

Defendants have not shown a new trial should be granted on the bases of either juror misconduct or because the jury disregarded the instructions.

---

[62]Fed. R. Evid. 606(b).

[63]80 Fed. Appx. 619 (10th Cir. 2003).

[64]*Id*. at 625 (quoting Advisory Committee Notes to the 1972 Proposed Rule 606(b) (citing *Farmers Co-op Elev. Ass'n v. Strand*, 382 F.2d 224, 230 (8th Cir. 1967)).

[65]*Id*. at 624-26.

[66]*Id*. at 626.

Defendants next contend that a new trial is required because errors in instruction resulted in juror confusion.   Defendants object to Instruction Nos. 14, 15, 16, 18, 19, 20, and 21B.[67]

Plaintiff contends that Defendants waived objections by not filing timely objections, that Defendants failed to make any objection to Instruction No. 21B before the jury retired, and that the instructions correctly stated the law.  The Court notes that Defendants did not notify the Court of any disagreements with the Joint Instructions filed by Plaintiff in accordance with the deadlines set in the Pretrial Order and did not make any specific objection to No. 21B.  Accordingly, any objection to those joint instructions was waived. However, Defendants are correct that the Court did accept and consider proposed instructions filed throughout the trial.  Accordingly, the Court will consider whether there was error in the instructions.

Defendants contend that Instruction No. 14 misstates the elements of a Lanham Act claim.   Plaintiff contends that No. 14 is substantially the same as a proposed joint instruction agreed to by Defendants and incorporates the elements of a Lanham Act claim as stated on a previous appeal in this case.[68]

Plaintiff is correct on both assertions: Defendants agreed to the language and it is taken from prior case law in this case.  Instruction No. 14 correctly states the law.

---

[67]Docket No. 1151 (hereinafter Jury Instructions).

[68]*Procter & Gamble I,*  222 F.3d at 1270.

Defendants contend that Instructions 15 and 16 together were deceiving and confusing.  In making this argument, Defendants do not object to the statement of the law in No. 15, which explains the four elements of "commercial promotion," including that "a representation must be (1) commercial speech . . .."  Defendants do object to No. 16 which states: "It has been previously determined in this case that the false rumor contained in the Amvox message is commercial speech.  You must consider that fact as proven."

Defendants contend that because the jury was instructed that this fact was proved,[69] that the jury most likely understood Nos. 15 and 16 together to mean that the Lanham Act violation was proven.  Defendants rely on a stricken juror affidavit to attempt to establish the effect of No. 16 on that juror's and other juror's minds "as influencing the juror to assent to the verdict" and "concerning the juror's mental processes in connection therewith" in violation of Rule 606(b).[70]  Accordingly, the Court does not consider that stricken Juror Statement for the purpose proffered by Defendants.

The Court finds no support for Defendants' argument that confusion must arise from an instruction that one fact is proved because it is a common occurrence in jury instructions.  The plain language of the instructions listed the elements, told the jury that if the verdict should be for a Defendant if the Plaintiff failed to prove "any of" the listed

---

[69]The Lanham Act claims elements were set forth in Instruction No. 14, the first element of which is explained as follows: "That a Defendant made a material false or misleading statement of fact in connection with the commercial promotion of their goods."

[70]Docket No. 1162 n.11 (quoting juror affidavit) and Docket Nos. 1195, at 9 and n.14 (same).

elements,[71] defined the terms used in the instructions, and told the jury that one fact was

to be considered as proven.[72]  "Juries are presumed to follow the court's instructions."[73]

The Court presumes that the Jury followed the instruction and accepted that one fact—

"that the Amvox message is commercial speech"—as proven and proceeded to determine

whether Plaintiff had proven the elements of a Lanham Act violation.

Defendants object to the language of Instruction No. 18 regarding dissemination on

the ground that it gave the jury no guidance and includes a "conflicting statement" that

dissemination need not have been made to the general public.

Plaintiff contends that the instruction tracks applicable law and that Defendants'

counsel agreed to the instruction after extensive proceedings.

In its entirely, Instruction No. 18 reads as follows:

> While the representations need not be made in a classic advertising
> campaign, but may consist instead of more informal types of promotion, the
> representations must be disseminated sufficiently to the relevant purchasing
> public to constitute "advertising" or "promotion" within that industry.  The
> extent of distribution necessary to constitute commercial advertising or
> promotion in a particular case may be an elastic factor, so that a relatively
> modest amount of activity may be sufficient in the context of a particular
> case. Nevertheless, these terms by their plain, everyday meaning connote
> some level of public dissemination of information.  *However, dissemination
> need not have been made to the general public.  The touchstone of the
> inquiry is whether the representations are part of an organized effort to
> penetrate the relevant market.*[74]

---

[71]Instruction No. 14.

[72]Instructions Nos. 14A, 15, 17, and 18.

[73]*Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1287 (10th Cir. 2000).

[74]Instruction No. 18 (emphasis added); *see also Larkin Group, Inc. v. Aquatic
Design Consultants, Inc.*, 323 F.Supp.2d 1121, 1128 (D. Kan. 2004) (employing

23

The italicized language was stipulated to by counsel[75] near the close of trial and added to the instructions as read to the jury.  The Court finds no error in the instruction.

Instruction No. 19 provides: "Procter & Gamble is not required to show that the Defendants acted intentionally to establish that they violated the Lanham Act."  Defendants contend that Instruction No. 19 conflicts with Instruction No. 15 and is legally wrong.

Plaintiff contends that there is no conflict, the instruction accurately states the law and Defendants waived any objection.

The Court notes that Defendants do not explain in what manner they believe that No. 19 conflicts with No. 15.  Instruction No. 15 provides:

> To be a "commercial promotion," a representation must be
> (1)   commercial speech;
> (2)   by a Defendant who is in commercial competition with Plaintiff;
> (3)   for the purpose of influencing consumers to buy that Defendant's goods or services; and
> (4)   disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

The Court finds no conflict between Instruction Nos. 15 and 19.  Instruction No. 19 accurately states the law.   Further, it is the same as Joint Instruction No. 34.  Defendants did not object to Instruction No. 19 at the jury instruction conference held on the next to the last day of trial.[76]

---

italicized language partially quoted from *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 482 (2d Cir. 2004)).

[75]The handwritten note stipulating to the italicized language is now docketed.

[76]*See* Docket No. 1144 (jury instruction conference held).

Defendants argue that Instruction No. 19 misstates the law because the Lanham Act does require intentional conduct.  The Court does not agree.[77]  Instruction No. 19 correctly states the law.

Defendants object to Instruction No. 20, the damages instruction, because it (1) does not require Plaintiff to prove that it was damaged by actual consumer deception or confusion and (2) does not define "out-of-pocket expenses."

Plaintiff contends as follows: Defendants agreed to Instruction No. 20 when it was submitted as Joint Instruction Nos. 36 and 40; the requested language regarding proving actual consumer deception would be redundant; and, the actual deception element is inherent in the instructions.

Instruction No. 20 accurately states the law on damages.  In Defendants' proposed No. 11 on damages, Defendants did not include the language they now contend should have been included—that Plaintiff was "required to prove it had been damaged by actual consumer confusion or deception resulting from the Amvox Message."[78]  For the reasons stated above, there was no need for Plaintiff to put on evidence regarding consumer confusion or deception where the presumption of consumer confusion or deception arising from the literally false Amvox Message was unrebutted.[79]

---

[77]McCarthy, *supra*, § 27:51 (opining "it is clear that § 43(a) does *not* require that the false . . . representation be made willfully or with an intent to deceive") (internal citation omitted).

[78]Docket No. 1114, at 13; Def.s' Mem. at 5.

[79]Defendants may have chosen not to attempt to rebut the presumption because it would have been inconsistent with their positions at trial—that they forwarded the false Amvox Messages because *they* believed them.  In other words, they were

For the same reason, there is no error in Instruction No. 20 regarding the language sought by Defendants.   The instructions correctly informed the jury on all necessary elements Plaintiff was required to prove such as materiality.[80]

Defendants also object to Instruction No. 20's inclusion of the following in the list of things the jury should consider relating to damages: "the amount of [Plaintiff's] out of pocket expenses incurred to correct the Defendants' false statements."   Defendants rely on the stricken Juror Statements for their position that the jury "misunderstood, were mislead by, or ignored"[81] the instruction.

As discussed above and in the Order on Juror Statements, statements of jurors are inadmissible on this subject.  The Court finds no error in Instruction No. 20 regarding out-of-pocket expenses.

Finally, Defendants contend that Instruction No. 21B misstated the law.    The instruction provides:

> Even if you find that the Plaintiff is entitled to recover damages against more than one Defendant, you must return a verdict in a single sum against all of the Defendants you find to be liable.  That is, there is only one loss to the Plaintiff and correspondingly only one damage award.  Therefore, even if you find more than one Defendant liable, you are not to divide the damages among the Defendants.  Rather, you must return one damage award, if any, against all of those you find liable.

---

deceived by the literally false Amvox Message.

[80]Instructions Nos. 14 and 14A (explaining the term material "means that the statement is likely to influence the purchasing decision").

[81]Def.s' Mem at 9.

Defendants contend this instruction imposed joint and several liability without adequate instruction.  Plaintiff contends that this instruction was correct.

The Court finds that the instruction was correct, based upon the case *Northing v. Marin*.[82]  In this case, as in *Northing*, the harm is indivisible and the jury was correctly instructed to return a single damage award.

Next, Defendants argue the Court wrongly excluded evidence of Plaintiff's historic spikes in call volume, specifically, *Plaintiff's* proposed Ex. 103, Defendants' proposed Ex. E-28, and Plaintiff's historical financial data.  Plaintiff disagrees.

Prior to trial, the Court ruled on the many motions in limine and excluded evidence outside of the time frame of Defendants' actions regarding the Amvox Message, including evidence from 1999.  The excluded evidence included matters excluded on Defendants' request.  However, during trial, the Court admitted some evidence regarding the historic call volume, including Ex. H-107, a chart of the call volume.

For the reasons stated in its pretrial orders and in its evidentiary rulings during trial, the excluded evidence was not relevant to the issues at this trial and would have been confusing to the jury.  This is especially true of events in 1999.  Because the 1999 events occurred in relatively close proximity to the events at this trial, there was a great potential for jury confusion.  Contrary to Defendant's position, the exclusion of this evidence was not necessarily adverse to Defendants.  If admitted, the jury could have easily been confused

---

[82]102 F.3d 1564, 1568-69 (10th Cir. 1996) (imposing joint and several liability for entire injury resulting from two or more people spreading a rumor).

and considered that the 1999 rumor activity was related to Defendants' earlier activity and awarded greater damages as compensation.

To the extent the historic call volume was relevant for purposes such as impeachment, Defendants were allowed some leeway at trial, greater than anticipated in the pretrial motions in limine, and were also able to refer in their closing arguments to matters that were admitted such as Ex. H-107 regarding historic call volumes. [83] The Court finds no error in the exclusion of Exs. E-28 and 103.

Nor does the Court find any error in the exclusion of financial data not considered by the parties' experts or that was outside the relevant time frame. For the reasons stated during trial, the Court finds no error in the exclusion of such evidence.

"A party moving for a new trial based upon an error of law must show not only that error occurred, but that the error affected the substantial rights of the parties."[84] Defendants have not met their burden to show either such error or that the verdict was not based on substantial evidence. Accordingly, the Motion for a New Trial must be denied.

## IV.  REMITTITUR

In their Motion for Judgment as a matter of law, and again in their Motion for a New Trial,[85] Defendants seek a remittitur because they argue the jury's $19.25 million award is

---

[83]The Court refused Plaintiff's proposed jury instruction (proposed to follow Instruction No. 24) that would have limited the jury's consideration of evidence such as Ex. No. 104.

[84]*Smith v. Cochran*, 182 Fed. Appx. 854, 864 (10th Cir. 2006) (citing Fed.R.Civ.P. 61).

[85]Docket No. 1194, Def.'s Reply, at 10.

so excessive as to shock the conscience and was clearly, decidedly and overwhelmingly against the weight of evidence of any out-of-pocket expenses proved at trial.  Plaintiff contends that the award is fully supported by the evidence and that Defendants' argument is based upon inadmissible juror statements.

In *Telecor Communication, Inc. v. Southwestern Bell*,[86] the Tenth Circuit explained the "steep uphill climb" a defendant faces "in attempting to overturn the jury's damages award:"[87]

> In addressing a challenge to a jury's damages award in an antitrust case, the Supreme Court held that the award "must be allowed to stand, unless all reasonable men, exercising an unprejudiced judgment, would draw an opposite conclusion from the facts."  This court has explained further that:
>
> * * *
>
>> In order to establish an abuse of discretion, the party that moved unsuccessfully for a new trial on the basis of an excessive verdict carries the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence.  In applying the abuse of discretion standard, we are also mindful that absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate.
>
> We have said that, even where a "persuasive" explanation of the jury's damages award indicates an award contrary to law, the possibility of a proper explanation, "[h]owever slight the chance," will suffice to sustain the damages award.[88]

---

[86]305 F.3d 1124 (10th Cir. 2002).

[87]*Id*. at 1143.

[88]*Id*. (quoting *Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555, 566 (1931); *Hynes v. Energy West, Inc*., 211 F.3d 1193, 1206 (10th Cir. 2000)

The Court finds that Defendants' characterization of the verdict amount as representing only out-of-pocket expenses is based upon inadmissible juror statements. For the reasons stated in the Court's Order on Juror Statements denying inquiry into the jurors' deliberations and striking the juror statements, the statements may not be received to impeach the jury verdict[89] in any manner, including by attempting to show an improper basis for the awarded damages.[90]

Plaintiff presented evidence at trial that it suffered damages far in excess of the jury's verdict. The jury heard one expert estimate that damages resulting from the loss of sales of three targeted products were $62 million and another estimate damages as a result of all targeted products at over $544 million. Thus, there is more than the mere "possibility of a proper explanation" for the amount of the damages needed to sustain the award under *Telecor Communication, Inc.* and other Tenth Circuit case law. The Court finds that the verdict is not clearly, decidedly, or overwhelmingly against the weight of the evidence. The verdict is fairly moderate in comparison to Plaintiff's damages evidence. Therefore, it in no way shocks the judicial conscience. Defendants' request for remittitur is denied.

---

(further quotation omitted); and *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1228 (10th Cir. 2000)).

[89]*McDonald v. Pless*,  238 U.S. 264, 269 (1915).

[90]Fed. R. Evid. 606(b).

## V.  CONCLUSION AND ORDER

After many years of litigation the parties were finally required to present to the jury their evidence on both sides of this bitter case.  The jury heard all of the evidence, including the ably contested damages evidence.  Most of the arguments Defendants now make regarding the purported insufficiency of the evidence were also made to the jury.  At the end of their deliberations, the jury found for Plaintiff in an amount well within the range of proof.  Nothing Defendants have presented in their post-trial motions convinces the Court that the jury's verdict should be set aside or a new trial awarded.  Based upon the foregoing, it is therefore

ORDERED that Defendants' Motion for Judgment as a Matter of Law (Docket No. 1159) is DENIED.  It is further

ORDERED that Docket No. 988 be UNSEALED.  It is further

ORDERED that Defendants' Motion for New Trial (Docket No. 1161) is DENIED.

DATED this 19th day of June, 2008.

BY THE COURT:

TED STEWART
United States District Court Judge

31